BRUNETTI, Circuit Judge:
 

 I. Facts
 

 The debtors in this case recorded a Declaration of Homestead on their home in Mendocino, California in October 1982. After the declaration was recorded, the California legislature substantially altered statutory provisions for homesteads by enacting the new Enforcement of Judgments Act (“NEJA”), which became effective on July 1, 1983. In December 1983, Redwood Empire Production Credit Association (“REPCA”) recorded an Abstract of Judgment (judgment lien) on the Mendocino home, in which the debtors have about $30,000 in equity.
 

 In order that Mr. Anderson might be closer to the college which he was attending, the debtors moved from their Mendocino house in January 1984 and leased it. They purchased a second house in Sonoma County and moved into it. Four months later, the Andersons filed a Chapter 7 bankruptcy petition.
 

 When the petition was filed, the Andersons had little or no equity in the Sonoma home. The debtors scheduled a homestead exemption on the Mendocino home based on the recorded Declaration of Homestead. REPCA objected to the exemption on the grounds that California law requires actual residence in the homestead and that the debtors did not reside in their Mendocino house. The bankruptcy judge agreed and disallowed the homestead. The
 
 *756
 
 debtors appealed to the district court, which reversed the bankruptcy court. We conclude that the bankruptcy court was correct and therefore reverse the district court.
 

 II. Overview
 

 This appeal raises the question whether the California Enforcement of Judgments Act (Cal.Civ.Proc.Code § 680.-010
 
 et seq.)
 
 gives these debtors a homestead exemption in bankruptcy based on a declaration of homestead recorded pursuant to prior state law. We must decide the factual question whether the debtors still reside in their Mendocino house and the legal question of the applicability of the California exemption laws. This court recently articulated the appropriate standard of review for bankruptcy cases thus:
 

 Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court’s decision. [citations omitted] We review the bankruptcy court’s findings of fact under the clearly erroneous standard and its conclusions of law de novo, [citations omitted].
 

 In re Commercial Western Finance Corp.,
 
 761 F.2d 1329, 1333 (9th Cir.1985). In bankruptcy actions, the federal courts decide the merits of state exemptions, but the validity of the claimed state exemption is controlled by the applicable state law.
 
 In Re LaFortune,
 
 652 F.2d 842, 846 (9th Cir.1981). We can find no relevant California cases which discuss the problems raised in this appeal. We are bound by California rules of construction in our independent interpretation of the California statutes at issue, however.
 

 The statutory provisions affecting homesteads are primarily located in Article 4 (§§ 704.710-704.850) and Article 5 (§§ 704.-910-704.995) of Title 5, Division 2, Chapter 4 of the California Code of Civil Procedure. Article 4 provides for an “automatic” homestead, for which no recording is necessary. Article 5 provides for recorded declarations of homestead.
 

 Contrary to the debtors’ assertions, rec-ordation of an Article 5 declaration of homestead does not constitute an election of the declared homestead over the automatic homestead. As we will demonstrate, Article 4 and Article 5 each confer different rights on the debtor, and there is no overlap between these rights. A debtor may thus have Article 4 rights, or Article 5 rights, or both or neither.
 

 In order to settle the question whether these debtors can claim an exemption in bankruptcy, we first must determine whether the debtors are entitled to the benefits of Article 4 or Article 5 or both. We then examine the benefits conferred on them by the applicable articles. Finally, since we conclude that the debtors’ substantive rights have been changed by the new legislation, we must decide whether the change violates the Contracts Clause.
 

 III. Applicable Articles
 

 A.
 
 Debtors did not Reside in Mendocino House
 

 At the outset, we acknowledge that the debtors resided in the Mendocino home at the time they filed their declaration of homestead, but did not reside in the house when they filed their bankruptcy petition. They moved their household to Sonoma County for the purpose of attending college and rented the Mendocino house to others. Under these circumstances, the absence from Mendocino could not be construed as a temporary absence like a vacation or hospital stay which the homestead statutes are designed to excuse.
 
 See
 
 Legislative Committee Comment to amended Cal.Civ.Proc.Code § 704.710.
 

 The Bankruptcy Court found by stipulation that the Debtors were not residing in the Mendocino home on the date of bankruptcy.
 
 Order Disallowing Homestead Exemption,
 
 No. 1-84-00607, slip op. at 2 (Bankr. N.D.Cal. Mar. 26, 1985). The District Court Judge did not reach the factual issue, since she determined that residency is not a prerequisite to the exemption. The bankruptcy court’s factual determination that the Andersons did not live in the Mendocino home is not clearly erroneous, and
 
 *757
 
 we apply the law based on this factual finding.
 

 B.
 
 Article 4
 

 Clearly these debtors are not entitled to the benefits of the Article 4 exemption on their Mendocino house. The “automatic” homestead exemption can only be claimed by a debtor who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling. Cal.Civ.Proc. Code §§ 704.710(a), (b), (c), 704.720, 704.-730, 704.740.
 

 C.
 
 Article 5
 

 By virtue of the recorded declaration of homestead under prior law, these debtors are entitled to the benefits of the Article 5 declared homestead. Under Article 5, a “ ‘declared homestead’ means the dwelling described in a homestead declaration.” Cal.Civ.Proc.Code §§ 704.910(a), 704.710(c). “Homestead declaration” includes declarations recorded under prior law. Cal.Civ.Proc.Code § 704.910(d)(2). The Article 5 definitions, unlike those in Article 4, do not require continued residency.
 

 Although residency is required to properly declare an Article 5 homestead, moving away from the homestead does not destroy the exemption status. Under the pre-NEJA law, a valid homestead remains effective until the party claiming the homestead abandons the homestead.
 
 California Bank v. Schlesinger,
 
 159 Cal.App.2d Supp. 854, 324 P.2d 119, 122 (1958). The same rule is continued for NEJA filings. “From and after the time of recording, the dwelling is a declared homestead for the purposes of this article.” Cal.Civ.Proc. Code § 704.920. The Legislature specifically provided several ways for one to abandon a declared homestead. A homeowner can file a declaration of abandonment. Cal.Civ.Proc.Code § 704.980. Additionally, one may have only one declared homestead at a time: a declaration of homestead by the same person on another property constitutes abandonment of the first declared homestead by operation of law. Cal.Civ.Proc.Code § 704.990. The Legislature has not expressed any intent to terminate declarations of homestead upon vacating the homestead premises, and we refuse to infer one.
 

 We conclude, as did the district court, that the debtors, having properly filed a declaration of homestead under prior law, are entitled to the benefits of Article 5. The district court’s memorandum did not discuss the rights conferred by Article 5, but implicitly held that Article 5 grants a homestead exemption to the same extent as Article 4. In order to dispose of this appeal, however, we must consider the nature of the rights provided under the “declared homestead” and “homestead exemption” statutes.
 

 IV. Substantive Rights Under NEJA
 

 The debtors essentially contend that Article 5 incorporated the Article 4 exemption by reference so that their declaration of homestead entitled them to all of the benefits of Article 4. REPCA, on the other hand, argues that NEJA changed the law of declared homesteads so that a declaration only provides for benefits in addition to those conferred by Article 4. After a careful analysis of the statute, we conclude that REPCA is correct. Article 4 protects the homestead from forced sale without prior court order. Cal.Civ.Proc.Code § 704.740(a). Article 5 provides additional benefits for debtors who file a declaration of homestead. Proceeds from voluntary sale are protected. Cal.Civ.Proc.Code § 704.960. Judgment liens do not attach to the equity protected by the declared homestead exemption. Cal.Civ.Proc.Code § 704.950. And protection of the declared homestead against attachment of judgment liens survives the deceased homestead owner. Cal.Civ.Proc.Code § 704.995.
 

 As a starting point, we note that under NEJA, the effect of a declaration of homestead recorded under former law is limited to the effect given the homestead by Article 5. Cal.Civ.Proc.Code § 694.090. Statements in legislative commitee reports which are in accord with a reasonable interpretation of a statute will be followed by
 
 *758
 
 courts to assist in interpretation of legislative intent.
 
 Wolfe v. Lipsy,
 
 163 Cal.App.3d 633, 642, n. 2, 209 Cal.Rptr. 801, 807, n. 2 (1985). In connection with Article 5, the Senate Legislative Committee commented:
 

 [T]he effect of a declaration of homestead recorded under former law is limited to the effect given the homestead declaration by this article [Article 5]....
 
 Other effects of a declaration of homestead under former law are not continued.
 
 See Section 694.090.
 

 Legislative Committee Comment — Senate, 1982 Addition to Article 5 (emphasis added).
 

 Under Article 5, a judgment lien does not attach to the declared homestead, except to the extent the debtor has equity over and above the homestead exemption defined in Article 4. Section 704.950 provides:
 

 (a)Except as otherwise provided in subdivisions (b) and (c), a judgment lien on real property created pursuant to Article 2 (commencing with Section 697.310) of Chapter 2 does not attach to a declared homestead if both of the following requirements are satisfied:
 

 (1) A homestead declaration describing the declared homestead was recorded pri- or to the time the abstract or certified copy of the judgment was recorded to create the judgment lien.
 

 (2) The homestead declaration names the judgment debtor or spouse of the judgment debtor as a declared homestead owner.
 

 (b) This section does not apply to a judgment lien created under Section 697.320 by recording a certified copy of a judgment for child or spousal support.
 

 (c) A judgment lien attaches to a declared homestead in the
 
 amount
 
 of any surplus over the total of the following:
 

 (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.
 

 (2)
 
 The homestead exemption set forth in Section 704.730.
 

 (Emphasis added.) The debtors point to this section as the source of their homestead exemption in bankruptcy, contending that the reference to Section 704.730 incorporates all of the benefits of Article 4 for houses protected by a declaration of homestead. We disagree.
 

 Section 704.730 merely states the
 
 amount
 
 of the homestead available under Article 4. By its terms the section neither confers benefits on homeowners nor sets forth requirements for entitlement to the automatic dwelling exemption.
 
 [1]
 
 Thus, the recording of a declaration of homestead of a judgment debtor does not mean that the debtor is automatically entitled to the homestead exemption set forth in Cal.Civ.
 
 *759
 
 Proc.Code § 704.730. In a state court proceeding for levy and execution, the creditor must submit an application for an order for sale. Cal.Civ.Proc.Code § 704.750. This application must state the amount of the homestead exemption. Cal.Civ.Proc.Code § 704.760. The debtor must then provide that he is entitled to a greater amount than that stated in the application. In attempting to meet this burden, the debtor will have to demonstrate that the dwelling falls within the definition of the homestead set forth in Cal.Civ.Proc.Code § 704.710(c).
 
 See
 
 Frandzel & Kaplan,
 
 The Enforcement of Judgments Law
 
 — One
 
 Year After Its Effective Date,
 
 Part 5:
 
 Practical Considerations in Executing on Dwellings,
 
 5.6, p. 37 (Calif.Cont.Ed.1984). The language of Article 5 indicates that it does not protect the homestead against levy and execution:
 

 “Whether or not a homestead declaration has been recorded: (a) Nothing in this article affects the right of levy pursuant to a writ of execution, (b) Any levy pursuant to a writ of execution on a dwelling (as defined in Section 704.710) and the sale pursuant thereto shall be made in compliance with Article 4 (commencing with Section 704.710) and the judgment debtor and the judgment creditor shall have all the rights and benefits provided by that article.”
 

 Calif.Civ.Proc.Code § 704.970. The legislative comment to this section even notes that “Section 704.970 makes clear that the homestead declaration does not affect the right of a judgment creditor to levy on the declared homestead pursuant to a writ of execution.”
 
 [2]
 

 The reference to § 704.730 in § 704.950 does not, as the debtors contend, incorporate all of the benefits in Article 4 into Article 5. Rather, the reference is the short hand method chosen by the legislature to give added protection to the Article 4 dwelling exemption by further exempting it from judicial liens. We are mindful of the California authorities which admonish that “the homestead statutes are to be construed liberally on behalf of the homesteader.”
 
 Ingebretsen v. McNamer,
 
 137 Cal.App.3d 957, 960, 187 Cal.Rptr. 529, 530 (1982).
 
 See also Swearingen v. Byrne,
 
 67 Cal.App.3d 580, 584, 136 Cal.Rptr. 736 (1977);
 
 San Diego White Truck Company v. Swift,
 
 96 Cal.App.3d 88, 94, 157 Cal.Rptr. 745, 748 (1979) (The broadest application of the homestead exemption statute is necessary to accomplish the benevolent purpose of the statute.) But liberal construction in favor of the debtor does not give us license to rewrite the California legislature’s scheme for homestead protection. We are compelled by the statutory language and legislative history to conclude these debtors are not entitled to exemption on their Mendocino house based solely on their recorded declaration of homestead.
 

 V. Constitutional Arguments
 

 Because we conclude that the debtors are not entitled to a homestead exemption based on their declaration recorded under prior state law, we next address the debtors’ contention that the statutory change deprives them of vested rights. Appellees base their challenge on the Contracts Clauses of the federal and California
 
 *760
 
 constitutions, not due process.
 
 See
 
 U.S. Const, art. I, § 10; Cal. Const, art. I, § 9.
 

 We note first that the California legislature has sought to avoid this conflict by characterizing the homestead as a revocable privilege rather than a right. In Cal. Civ.Proc.Code § 703.060 the legislature reserved the right to alter, repeal, or add to exemptions. “All contracts shall be deemed to have been made ... in recognition of the power of the state to repeal, alter, and add to statutes providing for liens and exemptions from the enforcement of money judgments.” § 703.060(b). Of course a legislative declaration that it has the power to destroy vested rights is not dispositive where the state or federal constitution prohibits the legislative act.
 
 See Allied Structural Steel Co. v. Spannaus,
 
 438 U.S. 234, 241, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978).
 

 In
 
 In re LaFortune,
 
 652 F.2d 842 (9th Cir.1981), this court held that a retroactive application of an exemption statute would violate the creditor’s rights under the contracts clause. In that case, the judgment creditor recorded a judgment lien and sought a writ of execution on the debtors’ dwelling. After the writ of execution was levied, the debtors filed a declaration of homestead. After notice of the sale was given, the debtors filed for bankruptcy. The bankruptcy court applied Cal.Civ.Proc. Code § 690.235 (1975), which provided the debtors with a homestead without filing a declaration of homestead. On appeal, the creditors argued that the bankruptcy court could not constitutionally apply § 690.235 to a judgment lien which arose out of loan agreements entered into prior to the enactment of the section.
 

 We articulated the analysis required under the contracts clause as follows:
 

 [I]n testing the validity of legislative action under the contract clause, it must first be determined whether the state law substantially impairs the contractual relationship.
 
 Allied Structural Steel,
 
 [438 U.S. 234, 244, 98 S.Ct. 2716, 2722]. If only minor alterations of contractual obligations are present, then the inquiry ends as no constitutional violation has occurred. Id. at 245, 98 S.Ct. at 2723. But where the impairment is substantial, then the nature and purpose of the legislation must be examined to determine whether the governmental interests justify the impairment.
 
 Id., Northwestern National Life Ins. Co. v. Tahoe Regional Planning Agency,
 
 632 F.2d 104, 106 (9th Cir.1980).
 

 In Re LaFortune,
 
 652 F.2d at 846. The analysis is substantially similar under the California constitution.
 
 See e.g. City of Torrance v. Workers’ Compensation Appeals Board,
 
 32 Cal.3d 371, 374-78, 650 P.2d 1162, 1164-65, 185 Cal.Rptr. 645, 647-48 (1982), appeal dismissed, 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983);
 
 In Re Marriage of Potter,
 
 179 Cal.App.3d 73, 224 Cal.Rptr. 312 (1986).
 

 Here, any alteration in the contractual obligation between the Andersons and REPCA is not substantial.
 
 In Re LaFortune,
 
 652 F.2d at 846. The debtors contend that they have lost the right to the homestead exemption. That is not true: the Andersons are entitled to the “automatic” exemption protecting their equity in their Sonoma home. If they had not moved from their Mendocino house, the automatic homestead exemption would have attached to that property instead. While it is true that the Andersons have little or no equity in the Sonoma home to protect, they could have transferred their equity in the Mendocino house to the Sonoma home: one may voluntarily sell a declared homestead, invest the proceeds in a new homestead within six months, and declare an exemption in the new property that relates back to the time of the original homestead.
 
 See
 
 Cal. Civ.Proc.Code §§ 704.720(b), 704.960. The Andersons initiated their bankruptcy almost ten months after NEJA became effective and therefore had time to determine how to best protect their equity under the new law. Thus, the debtors are not deprived of their homestead exemption, they are only limited to an exemption in their principal residence. They had an opportunity to protect their equity by transferring it to the Sonoma home, but failed to take the appropriate action.
 

 
 *761
 
 Since NEJA merely makes “minor alterations” in the way home equity must be protected, rather than completely depriving the debtors of their homestead, “the inquiry ends as no constitutional violation has occurred” and we need not balance the nature and purpose of the legislation and the deprivation of rights.
 
 LaFortune,
 
 652 F.2d at 846.
 

 VI. Conclusions
 

 We conclude that current California homestead laws do not give these debtors a homestead exemption to protect equity in a house which is not their primary residence. Retroactive application of the New Enforcement of Judgments Act does not violate the contracts clause because it did not deprive them of substantial rights and the government purposes for enacting the legislation justify any impairment. The district court is REVERSED.
 

 [1]
 

 . § 704.730 (West 1986) provides in its entirety:
 
 Amount of homestead exemption.
 

 (a) the amount of the homestead exemption is one of the following:
 

 (1) Thirty thousand dollars ($30,000)
 
 unless
 
 the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).
 

 (2) Forty-five thousand dollars ($45,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.
 

 (3) Fifty-five thousand dollars ($55,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead either a person 65 years of age or older, or a person physically or mentally disabled and as a result of that disability is unable to engage in substantial gainful employment. A rebuttable presumption affecting the burden of proof shall arise that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph.
 

 (b) Notwithstanding any other provision of this section, the combined homestead exemptions of spouses on the same judgment shall not exceed the amount specified in paragraph (2) or (3) whichever is applicable, of subdivision (a), regardless of whether the spouses are jointly obligated on the judgment and regardless of whether the homestead consists of community or separate property or both. Notwithstanding any other provision of this article, if both spouses are entitled to a homestead exemption, the exemption of proceeds of the homestead shall be apportioned between the spouses on the basis of their proportionate interest in the homestead.
 

 [2]
 

 . The legislative history regarding Cal.Civ.Proc. Code § 704.950 explains:
 

 Subdivision (a) of Section 704.950 continues former law. A judgment lien does not attach to property subject to a prior homestead declaration; likewise, such a judgment is not a lien on a surplus value therein over and above the amount of the homestead exemption, regardless of the value of the property.... [This Comment was not revised to reflect the addition of subdivision (c) to Section 704.950, which provides that a judgment lien
 
 does
 
 attach to equity in excess of the homestead.] However, as under former law,
 
 a judgment creditor may reach the value of the equity in a declared homestead in excess of the homestead exemption by levy of execution on the property.
 
 See Section 704.970_ In the proceedings following levy of execution, the judgment creditor may also raise the issues of whether the judgment debtor is entitled to a homestead exemption (as where neither the judgment debtor nor the spouse of the judgment debtor occupies the property as their principal dwelling) or the amount of the homestead exemption. See Sections 704.740-704.840, 704.970.
 

 Legislative Committee Comment — Senate, 1982 Addition (emphasis added).