In re Lyle KNUDSEN, Aileen Knudsen, Debtors.

Lyle KNUDSEN and Aileen Knudsen, Plaintiffs,

v.

Madelyn H. BROCK, Defendant.

Bankruptcy No. SB 87–03970 JW.
Adv. No. M7–1795 JW.

United States Bankruptcy Court,
C.D. California.

Dec. 4, 1987.

---

Derek L. Tabone, Van Nuys, Cal., for plaintiff.

W. Patrick O'Keefe, Jr., Santa Ana, Cal., for defendant.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

Lyle and Aileen Knudsen, debtors in the above captioned Chapter 7 case, brought a motion under 11 U.S.C. § 522(f) to avoid the liens encumbering their claimed homestead exemption. Defendant/creditor Madelyn H. Brock objects to the Knudsens' claimed homestead exemption pursuant to 11 U.S.C. § 522(l) and Bankruptcy Rule 4003(b).

### FACTS

The Knudsens (hereinafter the "Debtors") own a residence in Bermuda Dunes, California, which they acquired in 1981. On January 19, 1986, the Debtors recorded a declaration of homestead on the property. In June of 1986, the Debtors conveyed title to the property by grant deed to Premium Investments, Inc. (hereinafter "Premium"). However, the Debtors continued to live on the property.

On September 10, 1986, Madelyn H. Brock (hereinafter the "Defendant") recorded an abstract of judgment in Riverside County thereby creating a lien on the subject property in the amount of $137,-566.91. The Defendant also recorded a lis pendens against the property in connection with a related suit in Orange County Superior Court.

On May 7, 1987, the Debtors entered into an escrow to sell the property to Mr. and

Mrs. Hauft. Premium reconveyed title to the property to the Debtors on June 1, 1987. The Debtors filed their Chapter 7 petition on June 17, 1987. During July and August, the Debtors moved into an apartment in Chino. Although the sale of the Debtors' property to the Haufts is not complete, Mr. and Mrs. Hauft apparently are now living on the property.

The Debtors state that the property has a fair market value of $171,000. (The Court notes that the lienholders dispute the Debtors' valuation and contend that the property is worth significantly more.) It is encumbered by several liens, including that of the Defendant. In their Chapter 7 petition, the Debtors claimed a $60,000 homestead exemption on the residence pursuant to California Code of Civil Procedure § 704.730. The Debtors subsequently recalled that they recorded a declaration of homestead on the property as well. The Debtors seek to avoid all liens on the property because they impair the Debtors' homestead exemption. The Defendant objects to the Debtors asserting either the claimed homestead exemption or the declared homestead.

### DISCUSSION

The sole issue before the Court is whether or not the Debtors are entitled to exempt a portion of proceeds from the sale of the property to the Haufts under either their declared homestead or their claimed automatic homestead exemption. "In bankruptcy actions, the federal courts decide the merits of state exemptions, but the validity of the claimed state exemption is controlled by the applicable state law." *In re LaFortune*, 652 F.2d 842, 846 (9th Cir. 1981).

Pursuant to 11 U.S.C. § 522(b)(1), California "opted out" of the federal exemptions granted by 11 U.S.C. § 522(d). California law provides two types of homesteads. They are found in Article 4 (§§ 704.710–704.850) and Article 5 (§§ 704.910–704.995) of Title 5, Division 2, Chapter 4 of the California Code of Civil Procedure. Article 4 provides for an "automatic homestead" exemption, which does not require a recording. Article 5 enables the homeowner to create a recorded declaration of homestead.

### 1. *Article 5—Declaration of Homestead*

In a supplemental brief, the Debtors provided the Court with a copy of their declaration of homestead recorded on January 19, 1986. The Debtors argue that this declaration of homestead entitles them to a homestead exemption on the proceeds from the sale of their property to the Haufts.

■ The Debtors are incorrect. After the Debtors recorded their declaration of homestead, they conveyed title to the property to Premium Investments, Inc. At that point the Debtors ceased to have an interest in the property as required by Article 5, although they continued to reside there. *Cal.Code Civ.Proc.* §§ 704.910(b)(1), 704.920, 704.930. *See also* Legislative Committee Comment—Senate, 1982 Addition to Article 5. Upon the transfer of title, their homestead exemption attached to the proceeds from the transfer, if any, pursuant to *Cal.Code Civ.Proc.* § 704.960. The Court has no evidence before it to indicate whether or not the transfer resulted in any proceeds.

■ Moreover, notwithstanding the Debtors' arguments to the contrary, the Debtors' declaration of homestead was not automatically resurrected when Premium reconveyed title to the property to them. Without question, "one may voluntarily sell a declared homestead, invest the proceeds in a new homestead within six months, and declare an exemption in the new property that relates back to the time of the original homestead. See Cal.Civ.Proc.Code §§ 704.720(b), 704.960." *In re Anderson*, 824 F.2d 754, 760 (9th Cir.1987). However, the record contains no evidence which would indicate that such a chain of events transpired when title to the property was transferred from the Debtors to Premium and back to the Debtors. Thus, the Court holds that the Debtors are not entitled to exempt the proceeds of the sale based upon their declaration of homestead.

### 2. *Article 4—Automatic Homestead Exemption*

The Debtors also argue that they are entitled to exempt the proceeds of the sale based upon the Article 4 automatic homestead exemption, which they claimed in their chapter 7 petition.

An automatic homestead is defined as: [T]he principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.

*Cal.Code Civ.Proc.* § 704.710(c). According to the Defendant's interpretation of this section, a debtor cannot claim a homestead exemption unless he resides in the residence from the date that the lien attaches until the date that the Court determines the validity of the homestead exemption. It is undisputed that the Debtors no longer reside on the property and did not reside on the property on the date that the Court heard the Defendant's objection to the Debtors' homestead exemption. Therefore, the Defendant argues that the Debtors are not entitled to an Article 4 homestead exemption under California law.

■■■ The Defendant misconstrues the law. The Debtors' move from the property before the Court hearing is not fatal to their claimed automatic homestead exemption. Exemptions, including homestead exemptions, are determined as of the date the bankruptcy petition was filed. *Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir.1967); *In re Bernstein*, 62 B.R. 545, 550 (Bankr. D.Vt.1986); *In re Penland*, 34 B.R. 536, 540 (Bankr.E.D.Tenn.1983); *In re Falck*, 12 B.R. 835, 836 n. 1 (Bankr.C.D.Cal.1981). *See also* 4 *Collier on Bankruptcy* ¶ 541.04 at 541–22 (15th Ed.1987). "Changes occurring after filing are not relevant." *In re Brzezinski*, 65 B.R. 336 (Bankr.W.D.Wis. 1985). Although the Debtors no longer live in the residence, the evidence shows that they resided in it on June 17, 1987, the date that they filed their bankruptcy petition.

The Debtors did not complete the move to the apartment in Chino until August.

■■■ Nevertheless, the Debtors are not entitled to the benefits of the automatic homestead exemption because the other requirements of Article 4 are not satisfied. The Debtors seek to avoid the liens on the property and claim the homestead exemption to facilitate their *voluntary* sale of the property to the Haufts. Nothing in the statute or the legislative committee comments suggests that the automatic homestead exemption applies to a voluntary sale of the homestead.

Article 4 provides that the proceeds from the sale of a homestead are exempt only when the property is subject to a forced judicial sale under that division. *See In re Anderson*, 824 F.2d 754 (9th Cir.1987). If a homestead is damaged or destroyed or is acquired for public use, the proceeds of insurance or other indemnification received as compensation for the homestead are also exempt in the amount of the homestead exemption provided in § 704.730. *Cal. Code Civ.Proc.* §§ 704.720, 704.740. None of those conditions are present in this case. Furthermore, the legislative committee comments to § 704.720 state that "[a]s under former law, proceeds of a voluntary sale of the homestead are not exempt under the proceeds exemption provided by [section 704.720(b)]."

■■■ Moreover, Article 5 does not affect the right of a judgment creditor to levy on a declared homestead pursuant to a writ of execution, nor does it prescribe the procedures that the judgment creditor must follow. If a judgment creditor seeks to levy upon and sell a dwelling pursuant to a writ of execution, he must do so in compliance with Article 4, and the judgment creditor and the judgment debtor have all the rights and benefits under that article, whether or not a homestead declaration has been recorded. *Cal.Code Civ. Proc.* § 704.970.

Thus, Article 5 governs the debtor's right to a homestead in a voluntary sale of a dwelling, and Article 4 governs the debtor's right to claim a homestead exemption

in a forced judicial sale of a dwelling. Accordingly, the Court holds that the Debtors are not entitled to claim the Article 4 automatic homestead exemption when they seek to *voluntarily* sell their property.

The Court is mindful that exemptions are to be liberally construed under both California law and bankruptcy law. *In re Andreotti*, 16 B.R. 28, 32 (Bankr.E.D.Cal. 1981). However, liberal construction of the homestead exemption statute in favor of the debtor does not give the Court license to rewrite California law. *In re Anderson*, 824 F.2d 754, 759 (9th Cir.1987). Although the result is harsh the Debtors may not exempt the proceeds from the voluntary sale of their property to the Haufts under either Article 5 or Article 4.

This memorandum of decision incorporates the Court's findings of fact and conclusions of law. Counsel for the Defendant shall prepare and lodge a proposed judgment consistent with this memorandum of decision.